# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| ALLEN WILLIAM PURVIS, | | |
| Claimant, | ‖ | No. 19-CV-4036-LTS |
| vs. | ‖ | |
| ANDREW M. SAUL, | ‖ | **REPORT AND** |
| Commissioner of Social Security, | | **RECOMMENDATION** |
| Defendant. | ‖ | |

_____

Plaintiff Allen William Purvis ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34 and supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that he was not entitled to limited periods of disability. For the reasons that follow, I recommend that the District Court **affirm the Commissioner's decision**.

## I.     BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 12) and only summarize the pertinent facts here. This is an appeal from denials of DIB and SSI benefits. Claimant was born on November 23, 1969. (AR[1] at 233, 240.) Claimant is a

---

[1] "AR" cites refer to pages in the Administrative Record.

1

high school graduate.  (*Id.* at 264.)  He allegedly became disabled due to a lower back injury, a cyst on his kidney, high blood pressure, diabetes, depression, and chronic back pain.  (*Id.* at 263.)  Claimant's onset of disability date was February 20, 2014.  (*Id.* at 14, 233.)[2]  Claimant filed applications for SSI and DIB on September 22, 2016.  (*Id.* at 20.)  His claims were denied originally and on reconsideration.  (*Id.* at 131-74.)  A video hearing was held on October 1, 2018 with Claimant and his attorney, Roger Carter, in Carroll, Iowa and ALJ John Priester and Vocational Expert Carma Mitchell in West Des Moines, Iowa. (*Id.* at 27-56.)  Claimant and the VE testified.  (*Id.* at 33-55.)  The ALJ issued an unfavorable decision on November 16, 2018.  (*Id.* at 8-20.)

Claimant requested review and the Appeals Council denied review on June 13, 2019.  (*Id.* at 1-5.)  Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

On July 19, 2019, Claimant timely filed his complaint in this Court.  (Doc. 3.) On May 27, 2020, all briefing was completed and the Honorable Leonard T. Strand referred the case to me for a Report and Recommendation.

## II.     *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

---

[2] Claimant had previously been denied disability insurance benefits on February 19, 2014.  (AR at 57-70.)  The Appeals Council denied review of that decision on June 25, 2015.  (*Id.* at 75-81.) In addition, there seems to be a discrepancy about Claimant's onset of disability date for SSI benefits.  In his application, he stated his onset of disability date was August 23, 2010. (AR at 240.)  The ALJ said Claimant's onset of disability date was February 20, 2014, but treated SSI differently from DIB regarding any award of potentially past-due SSI benefits  (*Id.* at 14, 20.)

not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not

severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it.

4

20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id*. §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

A.     *The ALJ'S Findings*

As a threshold issue, the ALJ determined that Claimant met the insured status requirements of the Social Security Act through December 31, 2015. (AR at 14.) The ALJ then made the following findings at each step of the five-step process regarding Claimant's disability status.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity "at any time pertinent to [his] decision." (*Id.*)

At step two, the ALJ found that Claimant suffered from the following severe impairments since February 20, 2014: spine disorder and obesity. Beginning on October 4, 2017, the date the ALJ determined Claimant established the onset of disability, Claimant had the following severe impairments: spine disorder, obesity, and congestive heart failure.

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.*)

The ALJ evaluated Claimant's claims under listings 1.04 (disorders of the spine), and 4.02 (chronic heart failure while on a regimen of prescribed treatment). (*Id.*) The ALJ also considered the effects of obesity on Claimant's claim. (*Id.* at 15.) The ALJ

found that the medical evidence did not support listing-level severity and that "state agency reviewing physicians concluded that the claimant's impairments did not meet or equal any section in the Listing Impairments." (*Id.* at 14.)

At step four, the ALJ found that Claimant had the following RFC prior to October 4, 2017, the date Claimant became disabled:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl.

(*Id.*) The ALJ further found Claimant was unable to perform any of his past relevant work. (*Id.* at 18.)

At step five, the ALJ found that prior to October 4, 2017, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 19.) The ALJ therefore concluded that Claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2015, Claimant's last date insured. (*Id.* at 20.)

**B.    *The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v.*

6

*Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III.    DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to properly evaluate whether his impairments met or equaled listing 1.04, (B) failing to provide good reasons for the weight afforded to Dr. Marczewski's opinion, and (C) failing to provide good reasons for his credibility determinations.

### A.    *Relevant Background Facts*

Claimant's most recent past work was as a heavy equipment operator running equipment such as back hoes and track hoes. (AR at 34.) Claimant sustained a back injury on the job in 2010 and has not worked since that time. (*Id.* at 34, 38-39.) Claimant had lumbar fusion surgery in 2010 as a result of that injury. (*Id.* at 39.) Claimant's arguments are based on how the ALJ addressed alleged impairments that resulted from this injury.

**B.** *The ALJ properly evaluated whether Claimant's impairments met or equaled listing 1.04(A).*

Claimant argues that the ALJ erred at step three of the sequential analysis by not finding that he satisfied listing 1.04(A). Listing 1.04(A) provides the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 1.04(A).

Claimant asserts that he "clearly meets the first requirement of 1.04 related to the diagnosis of herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis as this is documented throughout the record." (Doc. 19 at 6.) For support, Claimant cites a 2015 lumbar spine MRI report that concluded Claimant had "1. Central fibrosis L4-5 slightly increased from 2010 with borderline stenosis, 2. Narrowing right neural foraminal L3-4 due to lateral posterior bulging disc, 3. Surgical changes." (*Id.*; AR at 332.) The Commissioner does not take issue with Claimant's representations regarding this first requirement, the "general 1.04" requirement. Indeed, the ALJ found that Claimant had a severe spine disorder. (AR at 14.)

The parties' argument is over whether Claimant's impairments satisfy the specific requirements of Section 1.04(A). Claimant argues that the ALJ "did not discuss the

numerous medical records that clearly document [his] symptoms which are elements of Listing 1.04(A)" and proceeds to cite various treatment notes in the over 5000-page administrative record that support his position. (Doc. 19 at 6-8.) The Commissioner responds that not only must Claimant establish that he fulfills all the medical criteria of Section 1.04(A), he must also show that this level of impairment continued, or was expected to continue for a continuous period of at least 12 months. (Doc. 21 at 7.) The Commissioner further asserts that the treatment notes cited by Claimant mostly refer to Claimant's own subjective complaints and when they do refer to objective findings, the findings do not satisfy all the required elements of 1.04(A). (*Id.* at 8.)

Claimant's own hearing counsel appeared to waive arguments based on listing 1.04 at the hearing. Counsel said the following in his opening statement to the ALJ, "I think this is probably a step five case, although there are points at which some of the record indicate that Allen was flirting with 1.04. . . ." (AR at 32.) As the Commissioner correctly points out, "[t]he litigation strategy of the [hearing] attorney necessarily carries with it preclusion consequences to where plaintiff's court attorney cannot now allege harm." (Doc. 21 at 6 (citing *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).) This is especially true in this case when counsel before this Court was named as counsel in the ALJ's decision, although her co-counsel apparently did all the questioning at the hearing. (AR at 10.) In spite of this, both parties have argued the issue and it will be addressed here.

The ALJ did not cite extensively to the record, relying, in part, on the opinion of state consulting physician Laura Griffin, D.O., who reviewed Claimant's medical history and wrote an opinion on December 5, 2016.[3] (AR at 15-16, 91-92.) In other parts of

---

[3] Dr. Griffin's opinion was affirmed by Donald Schumate, D.O. on December 15, 2016. (AR at 114.)

the decision, the ALJ cites to hundreds of pages of treatment notes rather than using pinpoint citations. (AR 16 (citing Exhibits BF1-F5 (142 pages), B7F-B10F, (642 pages).) This lack of precision could put a reviewing court in the unenviable position of culling through hundreds of pages and guessing at which pages the ALJ relied on for support. In this case, however, Claimant provided two pages of pinpoint citations to the record that he argues support a finding that he satisfied the requirements of Section 1.04(A). The Commissioner responded with a page-by-page rebuttal of Claimant's arguments and cited additional pages of the record that he argues support his position that Claimant does not satisfy the requirements of Section 1.04(A). For the most part, I will analyze the parties' proffered evidence in chronological order.

On June 19, 2015, Claimant had "abnormal gait indicating right lower extremity weakness which [was] confirmed with by [sic] exam, weakness 3/5, straight leg raise positive on the right, numbness of the L4-5 distribution right foot." (AR at 448.) By July 22, 2015, Claimant had explained to Physician's Assistant Scott Feese that his back and leg pain were equal, that his right leg pain was greater than his left leg pain, the pain went down his posterior thigh to the posterior calf with a sharp burning, achy-type pain. On the left side, he had occasional lower lateral ache. His symptoms were worse with standing, sitting, or lying down and better with sleep, the TENS unit, and medication. (*Id.* at 334.) Claimant had 5/5 muscle strength, normal muscle tone, intact sensation, and 2+ reflexes. (*Id.* at 335.) However, at the same appointment, Mr. Feese was unable to elicit Achilles reflexes bilaterally. (*Id.*) In August 2015, Claimant began physical therapy to decrease pain, improve function, increase range of motion, and increase strength. (*Id.* at 347-48.) He had 3/5 strength and 75% limitation in his lumbar range of motion. (*Id.* at 347.) Claimant's rehabilitation potential was good. (*Id.* at 348.) Although Claimant still had 3/5 strength and was 75% limited in his lumbar range of motion in January 2016 when he completed therapy, his pain was apparently reduced

because he tolerated treatment without complaints of pain or difficulty. (*Id.* at 367.) Claimant had a good prognosis in conjunction with a home exercise program. (*Id.*)

During the time Claimant was in physical therapy, he had several medical appointments. On September 2, 2015, Claimant reported to PA Freese complaining of a history of back pain that radiated down his legs. (*Id.* at 330.) Claimant had been through physical therapy in 2010, and reported that it provided relief, but he still "continue[d] to get mild pain." (*Id.*) The treatment note does not indicate that Claimant was then in physical therapy. Claimant also described his pain as "pretty significant back and right leg pain." (*Id.*) On examination, Claimant had 5/5 lower extremity strength and normal muscle tone. (*Id.*) Mr. Freese ordered an MRI. (*Id.*) On October 2, 2015, Claimant had normal neurological findings, including normal and symmetric reflexes. (*Id.* at 446.) On October 30, 2015, Claimant complained to Dr. Matthew R. Johnson of a backache, headaches, numbness, and tingling. (*Id.* at 328.) On examination, he had 1+ reflexes, 5/5 muscle strength, intact sensation, and normal gait and posture. (*Id.* at 329.) MRI results of Claimant's lumbar spine that were reviewed that day showed no significant degenerative changes above his previous fusion at L5-S1. (*Id.* at 328.) Dr. Johnson refused to provide documentation for Claimant to pursue disability based on low back problems. (*Id.* at 329.)

On November 6, 2015, Claimant's neurological examination was negative for numbness, among other things, and his reflexes were normal and symmetric. (*Id.* at 443.) On December 2, 2015, Claimant reported to John W. McClellan, M.D. "for evaluation of low back and bilateral leg pain, right greater than left." (*Id.* at 341.)[4] In what appears

---

[4] Claimant lists "Back pain, muscle aches, pain localized to one or more joints, and joint swelling localized to one or more joints. Limb weakness. No paralysis. Difficulty with balance and numbness of the limbs." (Doc. 19 at 7.) However, these are not Dr. McClellan's findings, or even the complaints that brought Claimant to the doctor on that day. The quoted material is from the part of the treatment note that contains Claimant's medical history, allergy information, and

to be a pre-visit medical history that was updated on the day of the visit, Claimant described his pain as "throbbing, shooting, sharp, numbness, and pins/needles." (*Id.* at 339.) Claimant said that the pain worsened with lying down, standing, sitting, walking coughing/sneezing, bending, lifting, rising from a chair, movement, turning, position changes, and "prolonged positions." (*Id.*) In spite of this, he also said position changes and lying down relieved the pain. (*Id.*) Claimant said his left leg would "kick out on him overall" and that he had low back and bilateral leg pain, posterior thigh and lateral calf pain to the great toe, with the right leg worse than the left. (*Id.*) Claimant did not appear uncomfortable or in any acute distress at the appointment. (*Id.* at 340.) Claimant's lumbosacral spine motion was normal and his modified (sitting) straight leg raising tests of both legs were negative. (*Id.*) Although "[l]umbosacral spine pain was elicited by [the] motion [of] both forward flexion and extension . . ." and he had decreased response to tactile stimulation of the leg/foot and "diminished sensation bilateral medial and lateral leg," Claimant had "[a]ctive flexion of the lumbar spine to the proximal tibia, [a]ctive extension [of] 10 degrees." (*Id.*) Claimant had motor strength of 5/5 and all reflexes, including the Achilles reflexes, were 2+. (*Id.* at 340-41). After examining Claimant and reviewing Claimant's records, Dr. McClellan diagnosed lumbago, bulging lumbar disc right L3-L4 and right L4-L5, pain in right leg greater than left, L5 distribution; pain in left leg; connective tissue and disc stenosis of intervertebral foramina of lumbar region right L3-L4 and L4-L5; and history of lumbar arthrodesis—status post L5-S1 fixation by JWM in 2011. (*Id.* at 341.) Dr. McClellan recommended "conservative care" consisting of pain management and physical therapy. (*Id.* at 342.)

---

similar information. While Claimant clearly presented on December 2, 2015 for pain, there is no indication that he had joint swelling or balance issues on that date.

On January 6, 2016, Claimant reported to Siouxland Pain Clinic for lower back and bilateral leg pain. (*Id.* at 372.) He did not appear uncomfortable or to be in any acute distress. (*Id.* at 373.) Although lumbosacral spine pain was elicited with motion, Claimant had normal range of motion, negative straight leg raises, and normal sensation and muscle tone. (*Id.* at 373-74.) All Claimant's reflexes were 2, muscle tone was normal, and there was no evidence of muscle weakness or muscle atrophy. (*Id.*) In February 2016, Claimant had normal gait and stance and normal range of lumbar and cervical spine motion. (*Id.* at 377.) He was in no acute distress and he did not appear uncomfortable. (*Id.*)

On March 21, 2016, Claimant had a diabetic follow-up exam. (*Id.* at 438.) Claimant's diabetic foot exam yielded the following results: he had 2+ reflexes on the left and 3+ reflexes on the right, normal vibratory sensation, normal sharp/dull discrimination on the left, but diminished sharp/dull discrimination on the right. (*Id.*) On March 29, Claimant saw Dr. Wade Lukken at Siouxland Pain Clinic. (*Id.* at 381-83.) Although Claimant said his pain was worse since his last injection a month prior to this appointment, he did not appear uncomfortable or to be in any acute distress and had a normal gait. (*Id.* at 381-82.) He had "generalized discomfort in the lower lumbar spine above his previous fusion . . . . [that] was not overwhelming," but had full range of motion in his cervical spine, normal range of motion in his lumbar spine, grossly intact musculoskeletal strength and sensation with no deficits, and his sacral compression test was negative bilaterally. (*Id.* at 382-83.) On April 5, 2016, Claimant was walking well and was in no acute distress. (*Id.* at 509.) On April 28, Claimant said he was doing "okay" in spite of chronic low back pain that radiated to his legs. (*Id.* at 384-86.) He had normal gait, stance, and strength. (*Id.* at 386.)

On January 23, 2017, Claimant denied having any back pain and had normal reflexes. (*Id.* at 626-27.) In July 2017, Claimant reported for a diabetes follow-up. (*Id.*

at 911-12)  Claimant had intact sensation in his feet and an only slightly positive straight leg raise on the right side only.  (*Id.* at 912.) On October 6, 2017, Claimant had no sensory or motor defects and normal reflexes.  (*Id.* at 1136.)

Although Claimant consistently stated he had back pain, I find the ALJ properly found that Claimant did not meet his burden to prove he satisfied the elements of Section 1.04(A).  Section 1.04(A) is written in the conjunctive, and while there is evidence that Claimant experienced each of the individual symptoms at various medical appointments, there is not evidence in the record as a whole that Claimant experienced the symptoms at the same time or consistently over a 12-month period.  *See*  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (disabilities must last or be expected to last for a continuous period of not less than 12 months). Although Claimant's physical therapist documented 3/5 muscle strength at the beginning and end of Claimant's nine therapy sessions (AR at 347-67), other treatment notes during the same time period documented 5/5 strength and treatment notes outside that five-month period consistently documented 5/5 strength.  Thus, the record does not support a finding of "motor loss (atrophy with associate muscle weakness or muscle weakness)" as required by Section 1.04(A).  Moreover, although Claimant sometimes had positive straight leg raising test results, the record as a whole does not support finding that this element is satisfied because the administrative record also does not document consistent positive straight-leg raising test results.  Furthermore, Claimant had mostly normal reflexes and was not in acute distress or uncomfortable at medical appointments, even when he reported to physicians specifically for back pain.  *See Moore*, 572 F.3d at 523 (Claimant had burden at step three).[5]  Accordingly, I recommend the District Court affirm the ALJ's decision on this issue.

---

[5] Although Claimant cites a few treatment notes where he had reduced sensitivity in his feet, another reason to affirm the ALJ's decision is that Claimant's back problems might not be the reason for this reduced sensitivity.  Claimant is a diabetic who is not always compliant with his

### C. The ALJ provided good reasons for the weight afforded Dr. Marczewski's opinion.

Claimant takes issue with the weight the ALJ assigned to the opinion of Dr. Leszek J. Marczewski and argues that Dr. Marczewski's medical opinions "are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence." (Doc. 19 at 9.)  Although Claimant refers to Dr. Marczewski's "opinion," he only cites one of his treatment notes, not his opinion. (*Id.* (citing AR at 449).)  Claimant argues that the ALJ should have assigned controlling weight to Dr. Marczewski's opinion because of its "consistency, longitudinal relationship and consistency with the substantial evidence of record." (*Id.*)  Claimant cites no support for his arguments other than the one treatment note.

On September 27, 2018,  Dr. Marczewski completed a standard check-box, fill-in-the-blank, short-answer Treating Medical Source Statement.  (AR at 5316-22.)  In pertinent part, Dr. Marczewski opined that Claimant could sit continuously for 15 minutes before needing to switch positions; would need to alternate positions by sitting at a desk or work station for less-than-15-minutes after continuously standing or walking without a break for 15 minutes; could sit a cumulative total of four hours in an eight-hour workday; could stand or walk for a cumulative total of two hours in and eight-hour

_____

treatment regimen. (*E.g.,* AR at 438 (diabetes . . . "for years not controlled  . . . monitors [blood sugars] sometimes"); 639 ("not always consistent with diabetic diet, he does not monitor blood sugar daily, activity level low"); 773 ("does not monitor blood sugars regularly").  Loss of feeling in the feet can be caused by diabetic neuropathy.  *See* Mayo Clinic, Diabetic neuropathy, "Diabetic neuropathy is a type of nerve damage that can occur if you have diabetes. . . . Depending on the affected nerves, diabetic neuropathy symptoms can [cause] pain and numbness in your legs and feet."), https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/symptoms-causes/ syc-20371580. Claimant's treating physician stated that Claimant had diabetic neuropathy.  (AR at 5316.)  This was not a reason explicitly articulated by the ALJ, although the cited pages of the administrative record are contained within the broad page ranges cited by the ALJ.

workday; and would need rests where he would have to recline or lie down in addition to normally scheduled morning, lunch, and afternoon breaks to relieve pain. (*Id.* at 5318-19.) Claimant would require less-than-one-hour of cumulative rest in an eight-hour workday. (*Id.* at 5319.) In relevant part, Dr. Marczewski limited Claimant to lifting five pounds frequently, ten pounds occasionally, and up to 50 pounds rarely. (*Id.*) He opined that Claimant would have good days and bad days and that he would miss work more than four days a month due to his impairments. (*Id.* at 5320.) Dr. Marczewski stated that Claimant had been limited as he described since February 2014. (*Id.*) Dr. Marczewski noted that his opinion was based, in part, on his diagnosis of Claimant with "low back pain with lumbar stenosis," among other things.[6] (*Id.* at 5321.) Dr. Marczewski did not provide citations to any medical records or other support for the limitations expressed in his opinion. In relevant part, he did not provide explanations for his cursory check-box, circle-the-answer, and yes/no answers.

The ALJ afforded Dr. Marczewski's opinion little weight for the time period prior to October 2017 because Dr. Marczewski stated that his opinion related to the time period beginning in February 2014, while records indicate that Dr. Marczewski first treated Claimant in June 2015. (*Id.* at 17-18.) In addition, the ALJ found that the evidence demonstrated that Claimant was not as limited as Dr. Marczewski opined "until October 2017 when he suffered heart issues." (*Id.* at 18.)

### 1. Legal Standard for Evaluating Dr. Marczewski's Opinion

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (noting internal

---

[6] Dr. Marczewski also based his opinion on Claimant's diabetes and cardiac problems. (AR at 17.)

citations omitted)).  An ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).  "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record as a whole.[7]  *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quotation omitted).  "Even if the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight."  *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (citation and brackets omitted).  However, a treating physician's opinion can be given limited weight if it contains only conclusory statements, contains inconsistent opinions "that undermine the credibility of such opinions," is inconsistent with the record, or if other medical opinions are supported by "better or more thorough medical evidence."  *Id.* (citations omitted).

When a treating physician's medical opinion is not given controlling weight, the following factors will be examined to determine the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors.  20 C.F.R. § 404.1527(c)(2).

### 2.    *Analysis*

#### a.    *Length and Frequency of Treatment Relationship*

"When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the medical source's opinion more weight than . . . if it were from a nontreating

---

[7] Under current regulations, a treating physician's opinion is entitled to no special deference.  *See* 20 C.F.R. § 404.1520c(c).  These regulations were effective as of March 27, 2017.  *See* 20 C.F.R. § 404.1527.  However, Claimant's claims were filed on September 22, 2016.  Thus, the old regulations apply.  *See id.*

source." 20 C.F.R. § 404.1527(c)(2)(i). As the ALJ noted, Dr. Marczewski began treating Claimant in June 2015 and continued to treat him for various conditions throughout the relevant time period. (AR at 448.) Therefore, this factor weighs in favor of giving the opinion more than little weight prior to October 2017, but only for opinions related to the time period beginning in June 2015.

### b. Nature and Extent of Treatment Relationship

"Generally, the more knowledge a treating source has about [a claimant's] impairment(s), the more weight [the ALJ] will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(ii). Dr. Marczewski appears to be Claimant's general practitioner, and therefore had a good overview of Claimant's different health issues. Therefore, this factor weighs in favor of giving the opinion more than little weight prior to October 2017.

### c. Supportability

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). "A treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker*, 459 F.3d at 937. In addition, "'[t]he checklist format, generality, and incompleteness of the assessments limit [an] assessment's evidentiary value.'" *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal brackets omitted)); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir.1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."); *see also Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) ("[Dr. Hollis's] assessments, however, consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses. They cite no medical evidence and

18

provide little to no elaboration, and so they possess little evidentiary value. On that basis alone, the ALJ did not err in giving Dr. Hollis's RFC assessments little weight and relying more heavily on other opinions in the record.") (internal quotations and citations omitted). Therefore, a treating source's opinion can be given limited weight if it contains only conclusory statements or inconsistent opinions "that undermine the credibility of such opinions." *Papesh*, 786 F.3d at 1132 (quotation omitted).

Claimant and the Commissioner refer to the one treatment note referred to above as the "opinion," while the ALJ evaluated and weighed Dr. Marczewski's actual opinion. Thus, the Court is at a disadvantage because the parties are not arguing about the opinion that the ALJ weighed. However, Claimant goes on to argue in his final appeal for remand,

> Dr. Marczewski had not been treating Plaintiff at the time of his original surgery but did have the benefit of a long-time relationship with Plaintiff and access to all of his records, objective diagnostic radiographs and reports. And, he had a long treating relationship with Plaintiff for years. His opinion, at least by the agency's rules prior to March of 2017 should be assessed controlling weight, rather than the SSA's doctors who never met, examined, treated or reviewed all of Plaintiff s medical history.[8]

(Doc. 19 at 12.)

Therefore, although Claimant cites only one page in support of his argument that the ALJ's decision must be reversed, I find that he understands what document constituted Dr. Marczewski's actual opinion, especially since Claimant's counsel likely solicited the opinion and provided the opinion form that Dr. Marczewski completed.

The note at issue was written during Claimant's first appointment with Dr. Marczewski on June 19, 2015. (*Id.* at 448-49.) Dr. Marczewski stated, "[T]he [patient]

---

[8] Claimant refers to the ALJ's assignment of significant weight to Dr. Griffin's opinion. (AR at 15-16.)

seem disable [sic] at current time appears chronic and permanent, not fit to perform any physical duties and most likely suffered from concussion which decreased cognitive function." (*Id.* at 449.) Claimant concedes that the ultimate decision on disability is reserved for the Commissioner. *See Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019). However, he argues that a treating physician's opinion should be given controlling weight when it meets the criteria set forth above. (Doc 19 at 9 (citing 20 C.F.R. § 404.1527(c).)

"The opinion of a treating physician is accorded special deference under the social security regulations and is normally entitled to great weight." *Despain*, 926 F.3d at 1027 (quotation omitted). This is only true when a treating provider's opinion meets all of the criteria set forth in 20 C.F.R. § 404.1527(c).

Dr. Marczewski's opinion does not satisfy all of the criteria. The treatment note that Claimant relies upon so heavily was written during Dr. Marczewski's first appointment with Claimant. There is no indication that Dr. Marczewski reviewed any medical records, imaging, or other information, but rather based his opinion on Claimant's narrative and the single examination he performed on Claimant who was "well appearing" and did not appear to be in acute distress that day. (AR at 448.) During the examination, Claimant had abnormal gait indicating right lower extremity weakness, weakness 3/5, straight leg raise positive on right, and numbness of the L4-5 distribution right foot. (*Id.*) Thus, to the extent this constitutes Dr. Marczewski's opinion, it is unsupported by any records and by any longitudinal relationship. Claimant wants the Court to assign a treating physician's opinion more weight than a consulting physician's opinion. In the case of this treatment note, it is impossible to do so because the consulting physicians at least reviewed the entire administrative record before rendering their opinions. Claimant does not take issue with the content of the consulting physicians' opinions, merely with the weight the ALJ assigned to Dr. Marczewski's opinion, which

happened to be less than the weight assigned to the consultants' opinions. Moreover, the checkmarks and circles without explanations that constitute Dr. Marczewski's actual opinion "possess little evidentiary value." *Thomas*, 881 F.3d at 675.

Claimant cites none of Dr. Marczewski's other treatment notes that support the extreme statement in this treatment note. However, in both October and November 2015, Dr. Marczewski stated Claimant had normal neurological examinations without focal findings[9] and normal and symmetric reflexes. (*Id.* at 443, 446.) In October 2016, Dr. Marczewski noted Claimant had normal motor function and skin sensation and symmetric reflexes. (*Id.* at 431, 433.) In January 2017, he stated Claimant's musculoskeletal examination was negative for back pain and tenderness. (*Id.* at 626-27.) Claimant had normal reflexes. (*Id.* at 627.) The only treatment note that could be read as support for his opinion and the June 19, 2015 treatment note is a July 10, 2017 treatment note. (*Id.* at 924.) However, that note, which documented "mild tenderness to palpation in LS-spine, straight leg raise slightly positive on the right side[,] skin sensation of the right feet intact" does not support the extreme limitations advanced in the other two documents. (*Id.*)

Based on the lack of support for his opinion, and especially for the conclusory statement regarding disability in his June 19, 2015 treatment note, a reasonable mind could "accept [the inconsistencies] as adequate to support [the ALJ's] conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations and quotations omitted.) This factor weighs against giving the opinion more than little weight prior to October 2017.

---

[9] "A focal neurologic deficit is a problem with nerve, spinal cord, or brain function. It affects a specific location, such as the left side of the face, right arm, or even a small area such as the tongue. Speech, vision, and hearing problems are also considered focal neurological deficits." U.S. Nat'l Lib. Med., MedlinePlus, Medical Encyclopedia, *Focal neurologic deficits*, https://medlineplus.gov/ency/article/003191.htm.

### d.     Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).  As discussed above, the ALJ concluded, in part, that "the record clearly supports . . . that the claimant was not limited to the extent opined by Dr. Marczewski until October 2017 when he suffered heart issues."  (AR at 17-18.)

On October 30, 2015, Claimant saw Dr. Johnson. (*Id.* at 328.)  On examination, he had 1+ reflexes, 5/5 muscle strength, intact sensation, normal gait and posture, and Dr. Johnson refused to provide documentation for Claimant to pursue disability based on low back problems. On December 2, 2015, Dr. McClellan was able to elicit "[l]umbosacral spine pain . . . by [the] motion [of] both forward flexion and extension . . . ," and Claimant had decreased response to tactile stimulation of the leg/foot and "diminished sensation bilateral medial and lateral leg." (*Id.* at 340.)  However, Claimant had active flexion of the lumbar spine to the proximal tibia, active extension of ten degrees, motor strength of 5/5, and all reflexes were 2+.  (*Id.* at 340-41.)

On January 6, 2016, Claimant saw Dr. Lukken who noted Claimant did not appear uncomfortable or to be in any acute distress.  (*Id.* at 373.)  Although lumbosacral spine pain was elicited with motion, Claimant had normal range of motion, sensation, muscle tone, and reflexes and negative straight leg raises.  (*Id.* at 373-74.)  There was no evidence of muscle weakness or muscle atrophy.  (*Id.* at 374.)  In February 2016, Dr. Lukken again noted no acute distress or discomfort and that Claimant had normal gait and stance and normal range of lumbar and cervical spine motion.  (*Id.* at 377.)  On April 5, 2016, Claimant was walking well and was in no acute distress when he saw Certified PA Patrick A. Honner.  (*Id.* at 509.)  On April 28, Claimant told PA Fernando he was doing "okay" and that his medications were "somewhat helpful," in spite of chronic low back pain that radiated to his legs.  (*Id.* at 384.)  He had normal gait, stance, and strength.

22

(*Id.* at 386.) On October 6, 2017, Dr. Bernadette K. Gyano reported Claimant had no sensory or motor defects and normal reflexes. (*Id.* at 1136.)

Claimant does not engage in many daily activities, but has the ability to drive approximately 20 miles before taking a stretch break (*Id.* at 48) and the ability to do his own laundry and some light cooking and cleaning, such as vacuuming, sweeping, and taking out the garbage, along with the ability to shop in stores, and take care of his own personal hygiene needs (*Id.* at 286-87).[10] This, along with all the medical evidence in the record, supports the ALJ's decision to assign little weight to this opinion prior to October 2017. *See Hacker*, 459 F.3d at 936 (the ALJ's decision is not outside the acceptable zone of choice simply because the court might have reached a different decision).

### e. *Specialization*

"[G]enerally [the ALJ will give] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Dr. Marczewski is a general practitioner who gave opinions about a patient under his care in specialized fields of medicine (i.e., endocrinology, cardiology, and pain management). (AR at 735–38.) Therefore, this factor weighs in favor of giving the opinion little weight prior to October 2017.

### f. *Conclusion*

After a thorough review of the entire record, I find that the ALJ's opinion is supported by substantial evidence on the record as a whole and should not be disturbed. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (citing *Teague v. Astrue,* 638

---

[10] Claimant has difficulty bending and twisting to put on shoes, socks, pants, and suspenders. (AR at 277, 286.)

F.3d 611, 616 (8th Cir. 2011) for the proposition that the "ALJ properly discounted medical source statement when physician's notes 'reported no findings of significant limitation or inability to work'")). I recommend that the ALJ's decision on this issue be affirmed.

**D.    *The ALJ properly evaluated Claimant's subjective complaints.***

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms. *Id.* § 404.1529(b),(c). When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) [the claimant's] functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3).[11]  An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective

_____

[11] The Code of Federal Regulations includes the additional factors of: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v), (vi).

24

complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (*citing Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. *Id.* § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

Claimant argues that the ALJ did not properly evaluate his subjective complaints of pain related to his back injury. Specifically, Claimant argues that the ALJ failed to properly weigh the objective medical evidence that supports his subjective complaints of back pain.[12] Claimant cites various treatment notes that document MRI and other imaging results and Claimant's subjective reports of pain. (Doc. 19 at 11-12.) Claimant argues that this evidence proves the following:

> [E]ven by the agency's unreasonable standard, Plaintiff still had objective and medically documented radiographs and clinical findings supporting the degree of pain and extent of limitations he reported.
>
> .   .   .
>
> The only medical records which might detract from a finding of disability have been misconstrued—the SSA appears to be relying upon Plaintiff s post-surgical spinal radiographs which are relatively stable—to equate with a finding that Plaintiff is not disabled, is not in pain, and is able to do most light exertional work. The radiographs, however, while appearing stable, do not lead to a reasonable medical opinion that Plaintiff is not disabled or that his symptoms are anything but the truth. Additionally, it should be noted that the Vocational Expert testified that Plaintiff s reported subjective symptoms would preclude all substantial gainful employment, and further,

---

[12] Although the objective medical evidence is not a *Polaski* factor, it is traditionally evaluated in this analysis.

> Plaintiff s absences from work twice per month to attend doctors' visits
> (which is evidenced objectively by the dates of the medical records) was
> also found to be work preclusive.

(Doc. 19 at 12-13.)

The Commissioner responds that the ALJ properly evaluated Claimant's subjective complaints and Claimant "has not shown otherwise." (Doc. 21 at 13.) Although Claimant proffers much of the same evidence he proffered to support his previous arguments, contrary to the Commissioner's argument, Claimant does not cite exclusively to the same evidence he proffered to support his previous arguments. (*Id.*) For the most part, I will only address evidence not previously addressed in earlier analyses. I will address Claimant's proffered treatment notes one-by-one.

On October 30, 2015, Dr. Johnson noted the following:

> Allen . . . has a long history of back pain and he underwent lumbar fusion
> by Dr. McClellan in Omaha in 2010. He states that he feels the same as he
> did before surgery and he never felt that he had any benefit from surgery.
> He also feels that he had no significant follow-up after surgery.

(AR at 328.) However, as noted above, at this appointment Claimant had 1+ reflexes, 5/5 muscle strength, intact sensation, normal gait and posture, and Dr. Johnson refused to provide documentation for Claimant to pursue a disability claim based on low back problems. (*Id.* at 329.)

Dr. McClellan reviewed Claimant's medical records in conjunction with Claimant's December 2, 2015 appointment and noted that he had reviewed Claimant's MRI and lumbar x-rays, which showed Claimant "had a previous L5-S1 fusion with iliac

fixation. No evidence of lucency[13] surrounding the instrumentation. Retrolisthesis[14] L4-L5. Disc space height is well maintained otherwise. No evidence of fractures. There is junctional stenosis L4/5 lateral recess bilaterally." (*Id.* at 341.) Claimant notes that Dr. McClellan diagnosed "bulging disc right L3-L4 and right L4-L5, connective tissue and disc stenosis of intervertebral foramina of lumbar region right L3-L4 and L4-L5," and "suspect[ed] the patient is developing junctional lateral recess stenosis L4/5 above fusion." (Doc. 19 at 12 (quoting AR at 341-42).) However, as discussed above, Claimant did not appear uncomfortable or in any acute distress at the appointment. (*Id.* at 340.) Claimant's lumbosacral spine motion was normal and his bilateral modified straight leg raising tests were negative. (*Id.*) Claimant also had "[a]ctive flexion of the lumbar spine to the proximal tibia, [a]ctive extension [of] 10 degrees," motor strength of 5/5 and all reflexes were 2+. (*Id.* at 340-41.)

On March 29, 2016, Claimant reported to Dr. Lukken for reevaluation four weeks after bilateral sacroiliac joint injections. (AR at 381.) Claimant claimed his pain was worse after his injection, but Dr. Lukken noted Claimant "doesn't seem to have any sacroiliac mediated pain on exam." (*Id.*) Dr. Lukken thought Claimant had "an L4 radiculopathy[15] or a post laminectomy syndrome[16] present." (*Id.*) Claimant was taking two-to-three Oxycodone per-day and they were helpful. (*Id.*) An impairment that is

---

[13] Lucency is "[i]n radiology, a region in an image caused by an absorber of lower x-ray attenuation than its surrounding tissues; in general, the opposite of opacity." *Farlex Partner Medical Dictionary* (2012), https://medical-dictionary.thefreedictionary.com/lucency.

[14] Retrolisthesis is "backwards slippage of one vertebral body on another." Michael Shen, M.D., et al., *Retrolisthesis and Lumbar Disc Herniation: a Preoperative Assessment of Patient Function*, 7 The Spine Journal 406, 407 (2007).

[15] Radiculopathy is a "disorder of the spinal nerve roots." *Stedman's Medical Dictionary* 1622 (28th ed. 2006).

[16] A laminectomy an "[e]xcision of a vertebral lamina; commonly used to denote removal of the posterior arch. *Id.* at 1046.

controlled with treatment or medication is not considered disabling. *Brace v. Astrue*, 578 F.3d. 882, 885 (8th Cir. 2009) (citations omitted). Claimant did not appear uncomfortable or in any acute distress, his spine had a normal range of motion, he had a normal gait and stance. (AR at 382.) As mentioned above, although examination of Claimant's lumbar spine revealed general discomfort above his fusion, it was not overwhelming and his musculoskeletal strength and sensation in the lower extremities was grossly intact with no deficits. (*Id.* at 383.)

On April 28, 2016, Claimant saw PA Fernando for medication management. (*Id.* at 384.) Mr. Fernando noted, "He still has quite a bit of pain especially when he is up and active and mobile." (*Id.*) However, Claimant also reported that he was doing "okay" and that his medications were "somewhat helpful." (*Id.*) Although Mr. Fernando could elicit spine pain with motion, Claimant had full strength and normal gait and stance. (*Id.* at 386.) [17]

Claimant argues that "[t]hroughout his notes, Dr. David Archer documented L3-4 and L5-S1 with presumably preexisting disease and current right sided radiculopathy and pedicle screws and rods spanning L5 and S1 with a [sic] intervertebral spacer, laminectomy and bone graft; extension of hardware on the right into the iliac bone." (Doc. 19 at 12 (citing AR at 937, 1098, 3438).) First, this is incorrect. There is no indication on page 937 that Dr. Archer was involved in ordering the x-ray that was reported on that page or reading it. The report was written by Theodore S. Donta, M.D. (AR at 937.) Second, the quote on 937, which is dated July 10, 2017, is somewhat different from the language quoted by Claimant:

_____

[17] In addition to this evidence, Claimant cites AR 377 (B4F 6/23), representing that it says the following: "A bolt into his pelvic bone and laminectomy at the sacroiliac levels; demonstrated classic symptomology of decreased SI joint function and increased sacroiliitis." This information does not appear on this page or anywhere in the treatment notes associated with the medical appointment encompassing this page.

> There are pedicle screws and rods spanning L5 and S1 with an intervertebral spacer, laminectomy, and bone graft material. There is extension of hardware on the right into the iliac bone. Hardware was present previously and is intact. Lumbar spine alignment is normal. Vertebral body heights are maintained. There is no evidence of bone lesion or fracture.
> IMPRESSION: Stable examination.

(*Id.*) Third, the citation to AR 1098 is to a page where all of Claimant's history is listed, including what appears to be an October 11, 2010 notation of Claimant's initial injury, not the language Claimant cites: "L3-4 and L5-S1 with presumaeably [sic] preexisting disease and current right sided radiculopathy triggered by recent fall at work." (*Id.* at 1098.) Fourth, AR 3438 is a page from a Unity Point "flowsheet" apparently documenting not only Claimant's April 4-6, 2018 hospitalization, but also his health history. The document is difficult to read, but it appears that AR 3438 merely duplicates the October 11, 2010 notation, "L3-4 and L5-S1 with presumabeably [sic] preexisting disease and current right sided radiculopathy triggered by recent fall at work." (*Id.* at 3438.) Thus, none of the cited pages say exactly what Claimant states they say, none of the pages, except, perhaps AR 3438, involves Dr. Archer, and none of the pages supports Claimant's argument that the ALJ failed to properly weigh the objective medical evidence in the record. No one disputes that Claimant injured his back in 2010 and suffered an impairment because of it. However, a diagnosis, standing, alone, is of little significance. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) ("[A] diagnosis has minor significance one way or the other.") (citing *Grebenick v. Chater,* 121 F.3d 1193, 1199 (8th Cir. 1997)); *Guilliams*, 393 F.3d at 801 (RFC is what the claimant can still do despite his or her limitations).

Although the VE testified that an individual who would be "consistently absent from work due to illness, chronic medical conditions, and the need to attend doctor's appointments at least two times every month" would not be able to maintain competitive

employment (AR at 54-55), the ALJ obviously did not believe, based on the record as a whole, that Claimant would be so limited.[18] Likewise, Claimant's focus on radiographs that "appear stable," but do not lead to the "reasonable medical opinion that [Claimant] is not disabled or his symptoms are anything but the truth" is misplaced. (Doc. 19 at 13.) The ALJ made his decision based on the record as a whole, citing medical evidence; testimony; Claimant's and his mother's adult function reports; Dr. Griffith's opinion, which, as the ALJ noted, discussed Claimant's treatment history; and the opinion of Dr. Marczewski. (AR at 15-20.)[19]

I recommend that the District Court affirm the ALJ's decision on this issue.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm** the decision of the ALJ **and dismiss with prejudice** the Claimant's claim. (Doc. 3.)

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72.   Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as

---

[18] To the extent Claimant argues he must attend doctor appointments twice a month, people often work those appointments around their lunch hours, break periods, flexible PTO time, or flexible physician office hours, if available, and still maintain fulltime work.

[19] I find that while the ALJ did not do an in-depth analysis of the other *Polaski* factors, his decision indicates that he at least considered the factors when evaluating Claimant's case.   I therefore find no error in the ALJ's evaluation of any *Polaski* factor and Claimant does not argue that the ALJ committed such error.

well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 26th day of June, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa