# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

ALLEN WILLIAM PURVIS,

        Plaintiff,

vs.

ANDREW SAUL, Commissioner of
Social Security,

        Defendant.

No.  C19-4036-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

_____

## I.     INTRODUCTION

This case is before me on a Report & Recommendation (R&R) entered by United States Magistrate Judge Mark A. Roberts.  Doc. No. 23.  Judge Roberts recommends that I affirm the Commissioner of Social Security's partial denial of plaintiff Allen Purvis' applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq., and supplement security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq.  Purvis has filed objections (Doc. No. 24) to the R&R.  The Commissioner has not responded.

## II.     APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003) (quoting

*Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998)). The Eighth Circuit has explained that the standard "is something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). However, the court does not "reweigh the evidence presented to the ALJ," *id.* at 555, or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted).

If, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (citation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

***B.***      ***Review of Report and Recommendation***

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

In August 2010, Purvis suffered a severe back injury while working as a heavy equipment operator. AR 34, 38–39. The injury required surgery and Purvis has not worked since. *Id.* In October 2012, he filed an application for DIB. AR 60. After being denied initially and upon reconsideration, his application was again denied after a hearing on February 12, 2014. *Id.* The Appeals Council declined to review the decision on June 25, 2015. AR 75.

On September 22, 2016, Purvis protectively filed another application for DIB and SSI alleging an onset date of February 20, 2014. AR 10. The application was denied initially and upon reconsideration. AR 10, 83–126. After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation process and issued a decision that was partially favorable to Purvis. AR 7–26. The ALJ found that Purvis became disabled on October 4, 2017, due to a spine disorder, obesity and congestive heart failure. AR 14, 19–20. However, because Purvis' insured status for DIB expired December 31, 2015, he was eligible only for SSI after that date. AR 20. As for the period from the alleged onset date, February 20, 2014, until his congestive heart condition was discovered on October 4, 2017, the ALJ found Purvis was not disabled because there was a significant number of jobs Purvis could have performed. AR 18–19. The Appeals Council denied Purvis' request for review on June 13, 2019. AR 1. Purvis then timely filed a complaint requesting judicial review in this court. He alleges three errors that warrant reversing the Commissioner's disability determination for the time period between February 20, 2014, and October 4, 2017. Doc. Nos. 1, 3, 19. The Commissioner resists Purvis on all three grounds. Doc. No. 21.

Purvis first argues that the ALJ erred at Step Three by failing to properly evaluate whether his impairments met or equaled Listing 1.04 (disorders of the spine). Doc. No. 19 at 5. Though the listing was mentioned by name, Purvis contends the ALJ failed to sufficiently explain why his impairments did not meet or equal it. *Id.* at 8. The Commissioner argues that Purvis' argument should be deemed waived because his

4

attorney admitted during the hearing that he could not meet the listing. Doc. No. 21 at 6–7. The Commissioner also argues the ALJ did not err because Purvis failed to show that his symptoms met Listing 1.04's severity and duration requirements. *Id.* at 7.

Purvis next contends that the ALJ erred when determining his Residual Functional Capacity (RFC) by failing to give controlling weight to an opinion from one of his treating physicians, Dr. Leszek J. Marczewski. Doc. No. 19 at 9. He argues that this error led to an inaccurate RFC and, therefore, an incorrect disability determination at Step Five. *Id.* at 9, 12–13. The Commissioner argues that the ALJ did not err because Dr. Marczewski's opinion for the time period at issue is supported by only a single conclusory treatment note. Doc. No. 21 at 10–11. The Commissioner also contends that the opinion is not supported by the record as a whole and was properly given little weight. *Id.*

Finally, Purvis argues that the ALJ failed to give proper weight to his subjective complaints of pain. Doc. No. 19 at 10. This created additional errors in his RFC. *Id.* at 12–13. The Commissioner argues that the ALJ properly considered Purvis' complaints and accurately weighed them in light of the rest of the record. Doc. No. 21 at 13–14.

With regard to the ALJ's analysis at Step Three, Judge Roberts noted that Purvis' attorney's statements at the hearing could have preclusive effects on judicial review but decided to evaluate the merits of Purvis' argument. Doc. No. 23 at 9. After reviewing Purvis' extensive medical record, Judge Roberts found that "while there is evidence that [he] experienced each of the individual symptoms [in Listing 1.04] at various medical appointments" there is no evidence "that [he] experienced the symptoms at the same time or consistently over a 12-month period." *Id.* at 14. Most notable was evidence that Purvis saw significant improvement in some symptoms over the course of physical therapy and lacked consistent positive straight-leg raise tests. *Id.* at 14. Judge Roberts also noted that the record indicated Purvis had "mostly normal reflexes and was not in acute distress or uncomfortable at medical appointments, even when he reported to physicians specifically for back pain." *Id.* Thus, Judge Roberts found that the ALJ's

5

conclusion that Purvis did not meet the requirements of Listing 1.04(A) was supported by substantial evidence. *Id.*

Next, Judge Roberts considered whether the ALJ erred by giving little weight to Dr. Marczewski's opinion. *Id.* at 15–24. Judge Roberts noted that Dr. Marczewski's opinion consisted of "a standard check-box, fill-in-the-blank, short-answer Treating Medical Source Statement" without any citations to medical records or detailed explanations. *Id.* at 15–16. While Judge Roberts found that the nature, length and frequency of Dr. Marczewski's treatment relationship with Purvis warranted giving more than little weight to his opinion for the relevant time period, he ultimately found those factors outweighed by the lack of support for Dr. Marczewski's opinion in his own treatment notes and the record as a whole. *Id.* at 18–22. Further, the only statement from Dr. Marczewski's treatment notes that supported the severe limitations described in his opinion was conclusory and was made after only one appointment with Purvis. *Id.* at 20. Therefore, Judge Roberts concluded that Dr. Marczewski's opinion was entitled to neither controlling nor great weight and the ALJ's decision to give it little weight was supported by substantial evidence. *Id.* at 20, 23.

Finally, Judge Roberts addressed Purvis' subjective complaints of pain. *Id.* at 24–30. After analyzing various accounts of Purvis' complaints, Judge Roberts concluded that they were unsupported by the medical record as a whole. *Id.* at 26–29. Thus, the ALJ's decision to give little weight to Purvis' subjective complaints was supported by substantial evidence. *Id.* at 29–30.

For these reasons, Judge Roberts recommends that I affirm the Commissioner's finding that Purvis was not disabled from February 20, 2014, to October 4, 2017. *Id.* at 30.

## IV. ANALYSIS

Purvis raises three objections to the R&R. His first objection largely echoes the first argument in his principal brief. He argues that the ALJ erred at Step Three by (1) finding that his impairments did not meet or equal Listing 1.04(A) and (2) failing to adequately explain why his impairments did not meet or equal to Listing 1.04(A). Doc. No. 24 at 1, 5, 7. His second and third objections, however, appear to attack the ALJ's conclusions from a new angle. In those objections he argues that the ALJ erred by giving great weight to an opinion from Dr. Laura Griffith, one of the Commissioner's medical consultants, when considering Listing 1.04 and determining his RFC. *Id.* at 8–9. He asserts that Dr. Marczewski's opinion was no more conclusory than Dr. Griffith's and should have been given greater weight because it came from a treating physician. *Id.* He also seems to argue that the ALJ should have given more weight to the testimony of the Vocational Expert (VE) regarding his subjective complaints at Step Five. *Id.* at 12–13.

I will not consider Purvis' objections to the extent that they were not raised to and considered by Judge Roberts. *See, e.g., United States v. Simeon*, 115 F. Supp. 3d 981, 996 (N.D. Iowa 2015) ("Federal courts have repeatedly held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise new arguments or issues before the district court that were not presented to the magistrate."). Thus, assuming that Purvis seeks to object to Judge Roberts' findings on Dr. Marczewski's opinion and his subjective complaints of pain in his latter two objections, I will review those issues de novo. However, I will not consider whether the ALJ gave proper weight to Dr. Griffith's and the VE's opinions.

In addition, because the ALJ found that Purvis became disabled on October 4, 2017, I consider only whether the ALJ erred with regard to the previous period. Thus, my analysis is confined to whether substantial evidence supports the ALJ's conclusion

7

that Purvis was not disabled between February 20, 2014, his alleged onset date, and October 4, 2017, the day his heart condition was discovered.

## A. *Listing 1.04*

At Step Three of the five-step process for determining disability, an ALJ must compare a claimant's impairments to the listings in 20 C.F.R. pt. 404, subpt. P, App. 1. 20 C.F.R. § 404.1520(a)(4)(iii). The listings "are descriptions of various physical and mental illnesses and abnormalities" that are "defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). If a claimant shows that his or her impairment is listed and meets all of the listing's medical criteria, then the claimant is considered disabled without further analysis. *Id.*; 20 C.F.R. § 404.1520(d). If a claimant's impairment does not meet all of the criteria of a listed impairment, or if it is not a listed impairment, the claimant may still conclusively establish a disability at Step Three by showing that his or her impairment is medically equal to a listed impairment. 20 C.F.R. §§ 404.1520(d); 404.1526.

Purvis argues that the ALJ erred by finding his impairment did not meet or equal Listing 1.04(A)'s criteria. On the issue of whether Purvis' attorney waived this argument at the administrative hearing, I agree with Judge Roberts that the best course is to address the merits of the argument.[1] To establish a disability under Listing 1.04(A), a claimant must provide evidence of:

   (1) a spine disorder that causes a compromised nerve root or spinal cord and

   (2) nerve root compression characterized by

      (a) neuro-anatomic distribution of pain,

---

[1] Purvis' attorney stated that he thought "this is probably a step five case," though there was evidence that Purvis' impairments were "flirting with [Listing] 1.04." AR 32. Even if a claimant can be precluded from making certain arguments on judicial review by waiving them during the administrative hearing, counsel's statements here do not approach the level of a waiver.

8

(b) limitations of motion of the spine,

(c) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and

(d) if there is involvement of the lower back, positive straight-leg raise test (sitting and supine).

20 C.F.R. Pt. 404, subpt. P, app. 1, § 1.04(A). The parties agree that Purvis has a spine disorder in the lumbar region that is covered under § 1.04(A), but they disagree about whether he has provided evidence that his disorder manifests all the required nerve root compression symptoms. The Commissioner argues that Purvis has failed to show that he suffered, or was expected to suffer, all of the required symptoms for the required duration of 12 months or more. Doc. No. 21 at 7. Purvis argues that the record shows that he has experienced all of the required symptoms at some point and that there is no requirement that he show that all symptoms were simultaneously present for 12 months or longer. Doc. No. 24 at 3. He also argues that the ALJ's explanation of why he did not medically equal the listing is inadequate. *Id.* at 5.

The ALJ provided little explanation for his finding that Purvis' impairments do not meet or equal a listing at Step Three. After noting that he considered Listing 1.04 specifically, the ALJ stated only that his conclusion was supported by the record as a whole and state agency medical consultants' findings:

> The medical evidence of record does not contain findings supportive of listing level severity and state agency reviewing physicians concluded that the [Purvis'] impairments did not meet or equal any section in the Listing of Impairments.

AR 14. While this short explanation is not particularly helpful, this does not necessarily mean that the ALJ erred. The Eighth Circuit has repeatedly held that "[a]n ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion." *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017). This is because "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding

9

where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). Additionally, an ALJ "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." SSR 17-2p, 2017 WL 3928306, at *4 (March 27, 2017). Therefore, remand is necessary here only if the ALJ's Step Three determination is not supported by the record as a whole.

As noted above, Listing 1.04(A) requires evidence that Purvis' spine disorder resulted in nerve root compression characterized by (a) neuro-anatomic distribution of pain, (b) limitations of motion of the spine, (c) motor loss (muscle weakness) accompanied by sensory or reflex loss and, because Purvis' impairment involves the lower back, (d) positive straight-leg raise tests. There is evidence in the record that Purvis suffered from stenosis[2] and disc displacement issues in the lumbar spine during the relevant period, both of which could result in nerve compression. His physicians noted these issues as early as December 8, 2014, and regularly attributed much of Purvis' reported back and leg pain to them through October 4, 2017. AR 332, 339–42, 372–75, 425, 431, 518, 530, 1129, 1136, 1139. The record includes MRI results from September 2015, in which the reviewing physician noted a bulging disc at vertebrae L3-L4 and "borderline stenosis" at L4-L5. AR 332. Thus, I turn to whether Purvis experienced the required nerve compression symptoms.

There is evidence that Purvis suffered from neuro-anatomic distribution of pain throughout the relevant period, most often referred to in his treatment notes as lumbar radiculopathy. He frequently and consistently reported pain, numbness and tingling in his legs, with his symptoms generally more severe in his right leg than his left. AR 328–

---

[2] Stenosis means a stricture or narrowing of a canal or orifice. *Stenosis*, Stedman's Medical Dictionary 1695 (27th ed. 2000).

29, 339–42, 372–75, 377, 379, 384–86, 434, 436, 448, 518, 530.  He often characterized his pain as ranging between a six and ten on a ten-point scale.  AR 339–42, 347, 384–86.  Although there is a dispute regarding the proper weight to give to Purvis' subjective complaints of pain, discussed further below, there is sufficient evidence in the record to suggest he has met this element of Listing 1.04(A).

As for the other three symptoms in Listing 1.04(A), the record contains conflicting evidence.  The earliest evidence of limited spinal motion is a finding that Purvis was 75% limited in his lumbosacral range of motion when he began physical therapy on August 2, 2015.  *Id.* at 347–49.  His physical therapist reported this same value in every treatment note up through January 19, 2016.  AR 353, 355, 357, 359, 361, 363, 365, 367.  However, the therapist also noted that Purvis had good rehabilitation potential, consistently showed progress with treatment and that the "perceived improvement" at the completion of treatment was "100%."  AR 349, 355, 357, 365, 367.  Other providers who saw Purvis during the time he was receiving physical therapy noted that the motion of his spine was "normal" even though the movement sometimes caused him pain.  *Id.* at 340, 374.  Physicians who examined Purvis after the end of physical therapy also noted that the motion in his lumbar spine was normal.  AR 377, 382.  The next mention of "limited movement" in the lumbar region of the spine was not until Purvis was hospitalized due to his heart condition on October 4, 2017.  AR 1129.

The record as to motor and reflex loss is similar.  Purvis' primary physician and physical therapist both found that he suffered from weakness in at least his right leg in their first treatment notes from June 2015 and August 2015 respectively.  AR 448, 347–49.  However, other contemporaneous and future treatment notes reported no weakness in his lower body, AR 328–29, 330, 335, 339–42, 372–75, 382–86, 1129, and only occasionally reported partial reflex or sensory loss in his legs.  AR 328–29, 335, 339–42, 382–86, 436, 438, 442, 1129.

The evidence regarding straight-leg tests is also inconsistent.  Purvis' treating physician noted that he had one positive test for his right leg in June 2015 and a "slightly

11

positive" test for the right leg in July 2017. AR 448. However, a physician who treated Purvis for lower back pain found negative straight-leg raise tests in both legs in December 2015 and January 2016. AR 340, 374.

Because physicians found that he suffered each of the required symptoms at some point in time during the relevant period, Purvis argues that he has provided sufficient evidence to find that he met Listing 1.04(A). To find otherwise, he argues, would create a standard requiring a claimant to show the simultaneous presence of all symptoms for 12 months that would be "near impossible" to meet. Doc. No. 24 at 2–4. Purvis relies on *Radford v. Colvin*, 734 F.3d 288, 293 (4th Cir. 2013), in which the court refused to adopt a bright line rule that a claimant must produce evidence showing that he or she suffered from all symptoms in Listing 1.04(A) for at least 12 months. *Id.* The court held instead that a claimant need only show that nerve root compression lasted, or was expected to last, for at least 12 months and that it caused each of the required symptoms at some point. *Radford*, 734 F.3d at 294.

Purvis' reliance on *Radford* is misplaced. Setting aside the fact that *Radford* is not binding precedent, applying its holding here would be inappropriate. The purpose of the listings is to streamline the decision-making process by identifying claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational backgrounds. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). The Supreme Court has clearly established that a claimant meets a listing only if he or she has shown that all medical criteria has been met. *Zebley*, 493 U.S. at 530. Thus, a spinal disorder with "nerve root compression" is an impairment severe enough to warrant an automatic finding of disability only when it causes the four symptoms identified in the criteria for the required amount of time. While the record shows that physicians identified each of the four required symptoms at some point in time, it also shows many times when physicians specifically found that Purvis did *not* suffer from some of them despite his continuing impairment. Some findings that Purvis did not suffer from the required symptoms were contemporaneous with findings that he was positive for them, raising

12

questions about whether he actually suffered the symptoms at that point in time. Other negative findings were subsequent to positive findings, suggesting that the symptoms disappeared over time even if they were previously present. These inconsistent findings provided adequate grounds for the ALJ to find that Purvis' lower back impairment did not cause all four required symptoms for at least 12 months during the relevant time period.

Further, even if *Radford* was binding precedent, it is distinguishable here. The Fourth Circuit considered only whether a claimant who suffered all four Listing 1.04(A) symptoms at some point throughout an extensive medical record must provide evidence showing that he suffered those symptoms during the same 12-month period to meet the listing. *Radford*, 734 F.3d at 292–93. The court did not address the situation here, in which a claimant who suffered each of the symptoms at some point meets the listing even when there is evidence that he *did not* suffer some of those symptoms within the same 12-month period. This case lies outside *Radford*'s holding.

Based on my de novo review, I find that there is substantial evidence supporting the ALJ's determination that Purvis did not meet or medically equal Listing 1.04(A). His objection on this issue is overruled.

### B.     *Dr. Marczewski's Opinion*

Purvis argues that the ALJ erred in determining his RFC because he did not give appropriate weight to the opinion of his treating physician, Dr. Marczewski. In a medical source statement completed in September 2018, Dr. Marczewski marked that Purvis can sit no more than four total hours in a day; that he cannot sit, walk or stand for more than 15 minutes at a time; that he can occasionally lift no more than 10 pounds; and that he cannot bend over or stoop. AR 5318–19, 5321. He also stated that Purvis had suffered these limitations since at least February 2014. AR 5320. Purvis argues that this is supported by Dr. Marczewski's finding after the first appointment that Purvis suffered from a severe and chronic spinal disorder that renders him "not employable." AR 448.

13

Generally, a treating physician's opinion is given controlling weight when "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the" record as a whole. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010); *see also* 20 U.S.C. §§ 404.1527(c)(2), 416.927(c)(2). When an opinion is not entitled to controlling weight, the weight it should receive depends on several factors, such as the nature and length of the physician's treatment relationship with the claimant, whether the opinion is supported by medical evidence, whether the opinion is consistent with the medical record and whether the treating physician is a specialist in the area about which he or she opines. 20 U.S.C. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). An ALJ may discount or disregard the opinion if other medical assessments are supported by more thorough or better evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). The same is true if the opinion is conclusory or inconsistent with the record as a whole. *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). Whatever the weight given to an opinion, the ALJ must give good reasons for it. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

The ALJ agreed that Dr. Marczewski's opinion accurately reflected Purvis' limitations after October 4, 2017, but found that the record did not support his opinion that the limitations extended back to February 2014. Because Dr. Marczewski did not begin treating Purvis until June 2015, and because the opinion was otherwise inconsistent with the record before October 2017, the ALJ gave the opinion little weight for any period before then. AR 14, 17. Thus, in his RFC findings for the period from February 20, 2014, to October 4, 2017, the ALJ relied primarily on the RFC assessment of a state agency consultant. AR 14. He concluded that Purvis was able to "perform light work . . . only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl." *Id.* The state agency consultant's opinion also noted that Purvis can lift or carry 20 pounds occasionally and 10 pounds frequently and that he can stand, walk or sit for up to 6 hours out of an 8-hour workday. AR 90–91.

14

Though the ALJ did not provide a detailed explanation as to why he did not give Dr. Marczewski's opinion controlling weight, his decision to do so is supported by substantial evidence because the opinion is unsupported by objective medical findings. First, as the ALJ noted, Dr. Marczewski did not begin treating Purvis until June 2015. AR 448. This alone weakens any deference Dr. Marczewski's opinion should receive for any period before that point. In addition, Dr. Marczewski did not cite any specific medical findings. He filled out a standard fill-in-the-blank, check-the-box form that provided no explanation or justification for his conclusions. The Eighth Circuit has repeatedly noted that RFC opinions in which a physician merely checks boxes or circles answers without citing medical evidence "possess 'little evidentiary value.'" *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)); *see also Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

Moreover, the vast majority of Dr. Marczewski's records document Purvis' treatment for diabetes, which is not among Purvis' severe impairments. *See* AR 395–469. There are only a few instances in which Dr. Marczewski performed clinical tests that are typically used to assess lower back problems – such as straight-leg raise and reflex tests – and, as already noted, those findings were not consistent with other physicians' findings or with some of his own subsequent findings. *See* AR 431, 433. Accordingly, the decision to not give Dr. Marczewski's opinion controlling weight is supported by the evidence and the proper weight to which it is entitled therefore depends on the factors specified in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The first factors look to the nature and length of the treatment relationship. 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). Dr. Marczewski began treating Purvis in June 2015 as a primary care provider. AR 448. This indicates that his opinion, if it is entitled to any weight, should be given weight only for the latter half of the period in question, June 2015 to October 2017, but not for February 2014 to June 2015. As Purvis' primary care provider, most of Dr. Marczewski's treatment focused on helping Purvis control his diabetes. *See* AR 395–469. Though he sometimes noted Purvis' back issues

15

and pain, he referred Purvis to other physicians and physical therapists to help with treatment and pain control. *See* AR 347–94. Because Purvis' primary impairment during that time was his lower back disorder, the fact that Dr. Marczewski sent him elsewhere for that impairment supports a finding that his opinion on that impairment should be given less weight.

Next is the extent to which Dr. Marczewski's opinion is supported by medical evidence. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). As noted above, Dr. Marczewski did not cite any specific medical evidence for his findings and rarely performed tests for Purvis' lower back issues. His conclusion that Purvis was disabled and "not employable" after his first appointment also lacked any reference to medical findings. This factor supports a finding that his opinion is entitled to little weight.

The next factor is consistency with the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). As discussed above, Dr. Marczewski's initial findings regarding Purvis' lower back issues were consistent with the initial findings of Purvis' physical therapist. AR 347–49, 448. However, these findings were contradicted by other contemporary and future findings. AR 328–29, 330, 335, 339–42, 367, 372–75, 438. Dr. Marczewski noted on later occasions that Purvis' motor function and reflexes were normal. AR 431, 433. As such, Dr. Marczewski's opinion is not consistent with the medical record subsequent to his initial findings. This factor supports a finding that his opinion is entitled to little weight.

The final factor is whether Dr. Marczewski specializes in the medical issues his opinion discusses and any other factor that may support or contradict his opinion. 20 C.F.R. §§ 404.1527(c)(5)–(6), 416.927(c)(5)–(6). Dr. Marczewski was Purvis' primary care provider. He is not a specialist in spinal disorders and he sent Purvis to other providers for that issue while he focused on treating Purvis' diabetes. This factor supports a finding that his opinion is entitled to little weight.

16

Based on my de novo review, I find that the ALJ's decision to give Dr. Marczewski's opinion little weight is supported by substantial evidence. Purvis' objection on this issue is overruled.

## C.    *Purvis' Subjective Complaints of Pain*

Finally, Purvis argues that the ALJ erred by not giving proper weight to his subjective complaints of pain. Doc. No. 19 at 10–12. He argues that his reported pain is consistent with and supported by his providers' observations, MRI results, X-ray images and other clinical findings. *Id.*

When evaluating the credibility of a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321–22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. The ALJ may not discredit the claimant's allegations based solely on the absence of objective medical evidence, but the ALJ may rest his credibility finding on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002), or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (*quoting Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001)).

In evaluating Purvis' complaints of pain, the ALJ relied on Dr. Griffith's assessment. AR 15–16. Dr. Griffith noted that imaging of Purvis' lumbar spine was generally normal for someone who has had lumbar fusion surgery. *Id.* She also noted

17

that although some treatments, such as injections, had done little to help Purvis' pain, others, such as physical therapy, had helped significantly. *Id*. These facts, combined with some internal inconsistencies in Purvis' assessment of his own limitations, rendered his subjective complaints only partially consistent with the record. *Id*. Based on that opinion, as well as subsequent imaging that provided further evidence that the condition of Purvis' lumbar spine was normal, the ALJ determined that Purvis' complaints were not supported by the record before October 4, 2017. AR 16.

The record does contain evidence that Purvis suffered pain attributable to his spinal disorder. He frequently and consistently reported pain in his lower back and legs. AR 328–29, 339–42, 372–75, 377, 379, 384–86, 434, 436, 448, 518, 530. He sometimes tested positive for pain when his lower back was manipulated. AR 339–42, 372–75, 448, 912. He provided a function report that showed a life greatly limited by pain, AR 285–92, which was generally consistent with a function report filled out by his mother. AR 276–83. Additionally, when Purvis had a disability interview in October 2016, the interviewer noted that Purvis had difficulty with sitting, standing and walking and "appeared very uncomfortable" and "in pain." AR 274.

However, there is also evidence that Purvis' pain was not as severe as he sometimes claimed. Physicians often noted that Purvis did not appear to be in discomfort or acute distress and sometimes noted that Purvis' radiculopathy and pain were only moderate or "not severe." AR 335, 377, 379, 382–83, 431, 436, 440. Despite some positive straight-leg raise tests, his tests were often negative and revealed normal strength levels. AR 330, 335, 339–42, 372–75, 377–79, 382–86. Treatment records also show that Purvis saw some improvement in his pain with medication, AR 381, 384, and significant improvement with physical therapy. AR 355, 357, 365, 367.

Given this conflicting evidence, a different ALJ may have given Purvis' subjective complaints more weight. However, my task is not to reweigh the evidence or to substitute my own judgement for that of the ALJ. Instead, as noted above, I must determine whether the ALJ's conclusion is supported by substantial evidence. Based on my de novo

18

review, I find that there is substantial evidence supporting the ALJ's conclusions that Purvis' pain was not as severe as he claimed and that it improved significantly with treatment.  Purvis' objection on this issue is overruled.

## V.    CONCLUSIONS

For the reasons set forth herein:

1.    Purvis' objections (Doc. No. 24) to the Report and Recommendation are **overruled**.

2.    I **accept** the Report and Recommendation (Doc. No. 23) **without modification**.  *See* 28 U.S.C. § 636(b)(1).

3.    Pursuant to Judge Roberts' recommendation:

a.    The Commissioner's disability determination is **affirmed**; and

b.    Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 13th day of August, 2020.

_____
Leonard T. Strand, Chief Judge